## HODGE v. FLY.

### No. 10004.

Court of Civil Appeals of Texas. San Antonio.

April 21, 1937.

Rehearing Granted May 19, 1937.

Osce Fristoe, of Harlingen, for appellant.

E. B. Fly, of Harlingen, pro se.

SMITH, Chief Justice.

The Regional Agricultural Credit Corporation, known as R.A.C.C., is, as its alphabetical designation foretells, a federal lending agency, of which E. B. Fly is trustee for the area embracing Cameron county. Fly is not only trustee for the agency, but for a number of years has been a constant and consistent borrower therefrom, as evidenced by his several notes, secured by his chattel mortgages upon fruit and vegetable crops grown on certain

blocks 12 and 15. It appears that Fly and W. T. Hodge jointly farmed blocks 12 and 15 for a number of years prior to this suit. The two would each advance expenses for operating the farm, Fly would see that the farm work was done, and Hodge, who operated a fruit and vegetable commission or distributing business, attended to the marketing of the crop. The two partners were each to own an undivided one-half interest in the crops so grown and marketed from blocks 12 and 15. Year after year, or at least for the last two or more years, Fly would borrow money from R.A.C.C., giving his note therefor, secured by chattel mortgage upon the current crops grown on blocks 12 and 15. When harvesting time came, from year to year, Fly would sell the crop to his broker partner, Hodge, who would dispose of it in the market, and Fly would account, in some way and to some extent or other, to R.A.C.C. R.A.C.C. knew full well what was going on between Fly and Hodge, and at no time held the mortgage over Hodge's head, or required any accounting from him. In fact, it appears that R.A.C.C. dealt with all the farmers as it did with Fly; it would take chattel mortgages from them, but acquiesced in the custom of the mortgagors exercising control over and selling their crops to Hodge, the broker, and accounting to the mortgagee for the proceeds. We get these facts from appellant's brief, appellee having filed no brief in the case.

By this course of dealing Fly's debts to R.A.C.C. aggregated more than $1,900 by December, 1934, as evidenced by his several past-due and unpaid notes to R.A.C.C., secured by chattel mortgage on Fly's crops on said land. On said date Fly executed his renewal note to R.A.C.C. for said sum, as well as a renewal chattel mortgage upon said crops. Fly defaulted, but instead of suing him on the obligation, the R.A.C.C., through Fly as its trustee, brought this suit against Hodge, alleging that he had purchased the mortgaged crops from Fly and converted the same to his own use, and was therefore liable to R.A.C.C. as for conversion.

Appellant in his first proposition contends that by reason of its dealings with Fly and Hodge, as well as with other farmers similarly situated, R.A.C.C. had waived its chattel mortgage lien upon the particular crop in controversy, and should look alone to Fly, the mortgagor, in pursuance with its custom and course of dealing with appellant through the years past. We sustain the proposition. Knight v. Barton (Tex.Civ.App.) 38 S.W.(2d) 1107 (writ refused); Gilliam v. Smither (Tex.Civ. App.) 33 S.W. 984.

The judgment is reversed and the cause remanded.

### On Motion for Rehearing.

Upon consideration of appellant's motion for rehearing, it is ordered that the judgment of the trial court be reversed, and that judgment be here rendered that appellee take nothing by reason of this suit, and pay all costs of the litigation.

Motion granted.